1 | JINA L. CHOI (New York State Bar No. 2699718)
CARY S. ROBNETT (Cal. Bar No. 160585)
2 | WILLIAM T. SALZMANN (Cal. Bar No. 205808)
salzmannw@sec.gov
3 | JASON H. LEE (Cal. Bar No. 253140)
leejh@sec.gov
4

5 | Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
6 | 44 Montgomery Street, Suite 2800
San Francisco, California 94104
7 | Telephone: (415) 705-2500
Facsimile: (415) 705-2501
8

9

10

11

12

13

14

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| 15 SECURITIES AND EXCHANGE COMMISSION, | Case No. _____ |
| 16 Plaintiff, | |
| 17 vs. | COMPLAINT |
| 18 VINAY KUMAR NEVATIA a/k/a VINAY KUMAR, VINAY NEVATIA, VINAY NIVATIA, | |
| 19 VINAY K. KUMAR, KUMAR K., VINAY KUMAR SRINIVASAN, VINAY SRINIVASAN | |
| 20 and KUMAR MANGALAM KUMAR, | |
| 21 Defendant. | |

22

23      Plaintiff Securities and Exchange Commission (the "Commission") alleges:

24                      **SUMMARY OF THE ACTION**

25      1.      From November 2011 to September 2012, Vinay Kumar Nevatia ("Kumar"), a former

26 Palo Alto executive search consultant and owner of several now-defunct investment entities,

27 purported to sell $900,000 worth of shares in a privately-held technology company that were actually

28 owned by eight other investors who had purchased the stock through Kumar in 2008.

COMPLAINT                                                1
*SEC v. VINAY KUMAR NEVATIA*

2.      Kumar went to great effort to conceal his double-dealing. He raised money from investors to purchase shares of CSS Corp. Technologies (Mauritius) Limited ("CSS"), a privately-held technology company. Three years later he began reselling the CSS shares, which belonged to the original investors without telling them. Kumar deceived subsequent buyers into believing that he was the legitimate and sole owner of the shares, and had them wire the money to purchase the shares to him. He lied to CSS's transfer agent, saying that new stock certificates should be issued to the new buyers and that the original stock certificates had been lost. Even after fraudulently selling their shares, Kumar deceived the original CSS investors into thinking that they still held them. He then absconded with the proceeds belonging to the original eight investors.

## JURISDICTION AND VENUE

3.      The Commission brings this action pursuant to Sections 20(b) and 20(d) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b) and 77t(d)] and Sections 21(d) and 21(e) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d) and 78u(e)].

4.      This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), 22(a), and 22(c) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), 77v(a), and 77v(c)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

5.      Kumar, directly or indirectly, made use of the means or instrumentalities of interstate commerce, or of the mails, in connection with the transactions, acts, practices, and courses of business alleged herein. In addition, significant steps of Kumar's fraud occurred within the United States, and the fraud had a foreseeable substantial effect within the United States.

6.      This Court is a proper venue for this action pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v] and Section 27 of the Exchange Act [15 U.S.C. § 77aa] because acts, transactions, practices, and courses of business constituting the violations alleged in this Complaint occurred within this District.

## INTRADISTRICT ASSIGNMENT

7.      Intradistrict assignment to the San Francisco Division is proper pursuant to Civil Local Rule 3-2(d) because acts or omissions giving rise to the Commission's claims occurred, among other places, in San Mateo County, California.

COMPLAINT                                                          2
*SEC v. VINAY KUMAR NEVATIA*

**DEFENDANT**

8.     Kumar, age 46, resided in Palo Alto, California at least from 2004 through 2013. During this period, Kumar used several aliases, including Vinay Kumar, Vinay Nevatia, Vinay Nivatia, Vinay K. Kumar, Kumar K., Vinay Kumar Srinivasan, Vinay Srinivasan, and Kumar Mangalam Kumar. From approximately 2007 through 2013, Kumar solicited real estate and securities investments through numerous entities owned or controlled by him, including KBR Capital Markets, LLC; KBR Capital Partners, Inc.; KBR Capital Partners, LLC; and KBR Fund, LP, which he operated out of offices in San Mateo County and his personal residence. Prior to this period, Kumar was employed in the San Francisco Bay Area as an executive search consultant. Kumar is not individually registered with the Securities and Exchange Commission and he has never been licensed to trade securities.

**RELEVANT ENTITIES**

9.     VRSBS Investment, LLC ("VRSBS") is a Delaware limited liability company operating in California. VRSBS has nine members including Kumar.

10.    CSS Corp. Technologies (Mauritius) Limited (f/k/a Cybernet Technologies (Mauritius) Ltd and SlashSupport Mauritius Ltd) is a private Mauritius company. It provides remote information technology infrastructure and support services.

**FACTUAL ALLEGATIONS**

11.    From approximately May 2008 through August 2008, Kumar raised money from eight United States-based investors to purchase shares of CSS stock. Kumar recruited these investors by touting CSS, which was a privately-held information technology company, as an exclusive pre-IPO opportunity. Kumar knew one of CSS's co-founders through prior unrelated business dealings, and he told the investors that CSS shares were only available to persons, like himself, with personal connections to the company.

12.    On or about August 8, 2008, Kumar and the other eight investors purchased 179,900 ordinary shares of CSS stock through VRSBS, an entity formed by Kumar for the limited purpose of buying the shares. Kumar told the investors that it was necessary for the shares to be purchased through a single entity to simplify the transaction for the seller. The investors became the entity's

1 sole members, and they contributed $899,500 for VRSBS to purchase CSS shares. Of this amount,

2 $25,000, less than 3% of the total, was contributed by Kumar, and the remaining $874,500 was

3 contributed by the other eight investors. Kumar used all of these funds for the purchase of CSS

4 shares on behalf of the VRSBS members.

5        13.     Although the CSS shares were held under the name of VRSBS, the investors and

6 Kumar agreed that the ownership rights to the shares would be directly proportional to the amount of

7 money that each member contributed to the shares' purchase. Accordingly, Kumar owned less than

8 3% of the CSS shares, while more than 97% of the shares were owned by the other investors.

9        14.     Kumar and the other VRSBS members adopted an "Operating Agreement of VRSBS

10 Investment, LLC," dated August 8, 2008, whereby VRSBS's "sole purpose" was to buy and hold CSS

11 shares "for the benefit of [the VRSBS members] in the percentage interest" as set forth in a schedule

12 to the agreement. Further, in the event of a potential sale of the CSS shares, Kumar, in his capacity as

13 VRSBS's managing member, was required to provide the other members with a description of the

14 material terms of the sale and was prohibited from commingling the proceeds with his personal

15 accounts.

16        15.     The investors requested that Kumar ask CSS and its transfer agent to issue separate

17 stock certificates, each listing only the number of shares owned by an individual investor. They

18 further requested that Kumar deliver each of these stock certificates to the corresponding investor.

19 This procedure was to prevent all the shares from being represented on a single stock certificate, to

20 allow each investor to have a physical document further representing his or her ownership interest,

21 and to ensure that each individual investor would have control over the future sale of his or her

22 shares. In response to these requests, Kumar arranged for CSS's transfer agent to divide the stock

23 certificates amongst the investors. From approximately August 2008 through December 2008,

24 Kumar delivered the stock certificates to each investor or his representative.

25        16.     Three years later, in November 2011, Kumar purported to resell approximately half of

26 the CSS shares held by the original investors to three directors of a venture capital firm based in San

27 Mateo County, California. On or about November 23, 2011, Kumar and the three directors came to

28 an agreement that the directors would pay VRSBS $359,800 in exchange for 89,950 shares of CSS.

COMPLAINT                             4
*SEC v. VINAY KUMAR NEVATIA*

1  In negotiating this sale, Kumar concealed the ownership interests of the original investors and falsely

2  told the directors that the shares were "his shares."

3      17.     Purportedly on behalf of VRSBS, Kumar signed a written agreement prepared by the

4  venture capital firm, titled "Stock Purchase Agreement," and dated November 23, 2011.  Kumar

5  made the following representations in this agreement: (1) that the seller was not a party to "any

6  agreement, written or oral," creating rights to the CSS shares in any other person, (2) that the shares

7  were "free and clear" of any encumbrances, and (3) that there were no restrictions of any nature

8  relating to the stock.  Kumar knew, or was reckless in not knowing, that these representations were

9  materially false or misleading because Kumar was conducting this resale as part of a fraudulent

10  scheme to steal the proceeds from eight other individuals, whose existence he had hidden from the

11  venture capital directors.  Moreover, in contrast to his misrepresentations, Kumar knew, or was

12  reckless in not knowing, that the CSS shares were, in fact, encumbered by oral and written

13  agreements giving ownership interests and other rights to the original investors.

14      18.     On or about November 23, 2011, Kumar instructed the three purchasers to wire their

15  payments for the CSS shares to a personal trust bank account held in Kumar's name, rather than to

16  the VRSBS bank account.  On or about the same day, Kumar received wire transfers for $359,800,

17  the full amount owed, but never transferred any of the sale proceeds to VRSBS's bank account or

18  shared any portion of the funds with the other VRSBS investors.  Kumar also never informed any of

19  the original investors about the resale despite the requirement in VRSBS's Operating Agreement that

20  he do so.

21      19.     Shortly thereafter, when the venture capital firm directors requested the stock

22  certificates underlying the shares they bought, Kumar falsely claimed that new certificates needed to

23  be issued because all his CSS shares were held on a single certificate, which covered a greater

24  number of shares than the amount the directors had purchased.  As Kumar knew or was reckless in

25  not knowing, the shares were actually reflected in several separate certificates that were being held for

26  safekeeping by the other VRSBS members.

27      20.     In a continuation of his fraudulent scheme, Kumar entered into an agreement on or

28  about February 16, 2012 to resell another 25,000 CSS shares to two of the venture capital firm

1 directors for $100,000. In another "Stock Purchase Agreement," this one dated February 16, 2012,

2 Kumar made the same material misrepresentations as in the November 23, 2011 Stock Purchase

3 Agreement alleged above. Similarly, on or about February 22, 2012, Kumar purported to resell

4 another 60,000 CSS shares for $195,000 to a Cayman Islands private equity fund managed out of

5 Hong Kong. Once again, Kumar concealed both February 2012 resale transactions from the original

6 investors despite his obligation under the VRSBS Operating Agreement to notify them.

7      21.     Kumar misappropriated the proceeds from the fraudulent resales of CSS shares in

8 February 2012. On or about February 17, 2012, Kumar instructed the two venture capital firm

9 directors by email to wire their payment to a bank account under Kumar's sole control, and received a

10 $100,000 wire transfer that same day. Kumar never subsequently transferred any portion of this

11 payment to VRSBS's bank account or shared any of it with the other VRSBS members. On February

12 24, 2012, the private equity fund purchaser wired its payment of $195,000, this time to VRSBS's

13 bank account. However, within approximately a week Kumar transferred all but $500 of the

14 $195,000 from VRSBS's bank account to the same United States-based bank account that he had

15 instructed the venture capital firm directors to wire funds one week earlier. Kumar never distributed

16 any of these funds to the other VRSBS members.

17      22.     Kumar engaged in further deceit to finalize the documentation for the resales, and he

18 ultimately induced the fraudulent transfers of virtually all of the CSS shares owned by the VRSBS

19 members. Following the February 2012 resales, the venture capital firm directors repeatedly

20 contacted Kumar to obtain stock certificates underlying both their November 2011 and February 2012

21 stock purchases. However, from approximately July through August 2012, CSS's transfer agent

22 informed Kumar that he needed to return the original CSS stock certificates for cancellation before

23 new certificates could be issued. Kumar knew or was reckless in not knowing that he could not

24 provide the original stock certificates because he had previously delivered all but one of the

25 certificates to the other VRSBS members. Instead, he falsely told the transfer agent during a phone

26 call that all of the original stock certificates issued to VRSBS had been lost. On or about September

27 10, 2012, Kumar repeated this misstatement in a document, titled "Indemnity for Lost Share

28 Certificates," that he signed and sent to both the transfer agent and the venture capital firm's CFO.

1  Based on this false document, on or about September 11, 2012, the transfer agent issued new CSS

2  stock certificates to three of the four purchasing directors at the venture capital firm. After an

3  administrative delay, the transfer agent issued new CSS stock certificates to the fourth director on or

4  about May 2, 2013.

5         23.     In an attempt to maintain his ruse, Kumar engaged in increasingly desperate attempts

6  to conceal his illicit stock sales from the original investors. From approximately March 2012 through

7  July 2013, Kumar engaged in deceptive conduct and made material misstatements and omissions that

8  include:

9           • Falsely indicating to the original investors that he would get new certificates issued in

10             the individual investors' names when, in reality, he was in the final stages of the

11             fraudulent resale of their shares;

12           • Falsely telling one investor that his investment was performing well and that CSS was

13             planning to have a potentially lucrative initial public offering, while continuing to

14             conceal and withhold the proceeds he already received from the fraudulent resales;

15           • Falsely telling two investors who wanted to cash out their shares that he would try to

16             find interested buyers, while continuing to conceal the fact that he had already

17             fraudulently sold the shares; and

18           • Asking investors to send him wiring information, ostensibly so they could receive a

19             dividend announced by CSS, when he knew that the original investors would never

20             get a dividend for shares that had been fraudulently resold by him.

21         24.     In July 2013, some of the original investors reached out directly to CSS and learned

22  that Kumar had fraudulently sold nearly all of their CSS shares without obtaining their approval,

23  distributing the proceeds, or even providing notice of the sales. In August 2013, certain of these

24  investors confronted Kumar with evidence obtained from CSS documenting his illicit stock sales.

25  Even then, Kumar tried to keep his scheme going by falsely claiming that he had not actually sold the

26  shares, but only temporarily "transferred" them to safeguard them from Kumar's creditors. Later that

27  month, Kumar pretended to restore an original investor's shares through a purported stock transfer

28  from two fictitious shareholders. As proof, Kumar sent the investor bogus forms purporting to record

COMPLAINT                                        7
*SEC v. VINAY KUMAR NEVATIA*

1  the transfer of 100,000 shares, but, in reality, neither of the two purported transferors owned any CSS

2  shares. After this point, Kumar stopped responding to all attempts by the VRSBS members to contact

3  him.

**FIRST CLAIM FOR RELIEF**

**Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder**

6      25.    The Commission realleges and incorporates by reference paragraphs 1 through 24

7  above.

8      26.    By engaging in the conduct described above, Kumar, directly or indirectly, in

9  connection with the purchase or sale of securities, by the use of means or instrumentalities of

10  interstate commerce, or the mails, with scienter:

    a.   Employed devices, schemes, or artifices to defraud;

    b.   Made untrue statements of material facts or omitted to state material facts

         necessary in order to make the statements made, in the light of the circumstances

         under which they were made, not misleading; and

    c.   Engaged in acts, practices, or courses of business which operated or would operate

         as a fraud or deceit upon other persons, including purchasers and sellers of

         securities.

18      27.    By reason of the foregoing, Kumar has violated, and unless restrained and enjoined,

19  will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17

20  C.F.R. § 240.10b-5].

**SECOND CLAIM FOR RELIEF**

**Violations of Securities Act Section 17(a)(1)**

23      28.    The Commission realleges and incorporates by reference Paragraphs 1 through 24

24  above.

25      29.    By engaging in the conduct described above, Kumar, directly or indirectly, in the

26  offer or sale of securities, by use of the means or instruments of transportation or communication in

27  interstate commerce or by use of the mails with scienter employed devices, schemes or artifices to

28  defraud.

COMPLAINT                       8
*SEC v. VINAY KUMAR NEVATIA*

30.     By reason of the foregoing, Kumar violated, and unless restrained and enjoined, will continue to commit violations of, Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)].

### THIRD CLAIM FOR RELIEF

**Violations of Securities Act Sections 17(a)(2) and (3)**

31.     The Commission realleges and incorporates by reference Paragraphs 1 through 24 above.

32.     By engaging in the conduct described above, Kumar, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails:

      a. Obtained money or property by means of untrue statements of material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

      b. Engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchasers.

33.     By reason of the foregoing, Kumar has violated, and unless restrained and enjoined, will continue to violate Sections 17(a)(2) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and (3)].

### PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

**I.**

Permanently enjoin Kumar from directly or indirectly violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] as well as Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

**II.**

Order Kumar to disgorge ill-gotten gains from the conduct alleged herein, plus prejudgment interest;

COMPLAINT                                                          9
*SEC v. VINAY KUMAR NEVATIA*

### III.

Order Kumar to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

### IV.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court; and

### V.

Grant such other relief as this Court may deem just and appropriate.

Respectfully submitted,

Dated: December 2, 2014

/s/ William T. Salzmann

William T. Salzmann
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION

COMPLAINT
*SEC v. VINAY KUMAR NEVATIA*

10